JOHN L. NOWAK AND CONNIE L. NOWAK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nowak v. Commissioner
Docket No. 29235-88
United States Tax Court
T.C. Memo 1994-428; 1994 Tax Ct. Memo LEXIS 436; 68 T.C.M. (CCH) 574; August 24, 1994, Filed *436 Decision will be entered for respondent. For petitioners: Robert T. Gilleran. For respondent: Victor A. Ramirez. DAWSON, BUCKLEY
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Helen A. Buckley pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: Respondent determined a deficiency in petitioners' 1983 Federal income tax in the amount of $ 14,777, together with additions to tax under section 6653(a)(1) in the amount of $ 738.85, under section 6653(a)(2) in the amount of 50 percent of the interest due on $ 14,777, and under section 6661(a) in the amount of $ 3,694.25. Further, respondent determined petitioners were liable for increased *437 interest under section 6621(c). Petitioners resided at Bellaire, Ohio, at the time the petition was filed. None of the facts were stipulated, despite the fact that our Rule 91 so requires, and our Standing Pre-Trial Order in this matter provided: ORDERED that all facts shall be stipulated to the maximum extent possible. All documentary and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used to impeach the credibility of a witness. Objections may be preserved in the stipulation. If a complete stipulation of facts is not ready for submission at trial, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party. * * *
Despite the clear language of the Rule and the Standing Pre-Trial Order, petitioners' counsel chose not to agree to the stipulation of facts drafted by respondent. However, all of the documents respondent included in the proposed stipulation were given to respondent directly by petitioners, with the exception of the notice of deficiency and the tax return. The Court *438 expended considerable time and effort going through respondent's proposed stipulation item by item to ascertain what, if anything, petitioners contested. In fact, because petitioners had handed to respondent all the relevant documents which were included in the proposed stipulation of facts, petitioners' counsel conceded their authenticity. Consequently, we conclude that the stipulation and the facts set forth therein have been established. Petitioners have conceded they were not entitled to claim on their 1983 return the Schedule C deduction of $ 42,000. Accordingly, respondent's determination of the deficiency has been conceded. After this concession, [2] the issues for decision are whether petitioners are liable for the additions to tax for negligence pursuant to section 6653(a), for substantial understatement pursuant to section 6661(a), and for increased interest pursuant to section 6621(c) for tax-motivated transactions. *439 Petitioners invested in the Petro West project. That case was decided against the taxpayers in , holding that the transactions in question, identical to those before us here, were completely devoid of economic substance. John L. Nowak (hereafter petitioner) has a background in electronics as an engineering electronics technician. After leaving the Navy he worked for 4-1/2 years as an engineering technician for an industrial electronics manufacturing company in Columbus, Ohio. Thereafter he went into the cable television business with two other partners. Petitioner entered into this field in its infancy; he and his partners constructed the cable system and operated it. The business was economically successful. Sometime during 1982 petitioner heard of the Petro West project through an investment letter put out by Vello Kulbin. Petitioner had some interest in the commodities market and was interested in minerals, particularly gold and silver. Petro West purported to be mining for gold. He received several investment newsletters from Vello Kulbin, some of which contained reports of Petro West mining activities, *440 some of which had pictures of the areas purportedly being mined, and some of which had pictures purported to be of executives with Petro West. Petitioner made no effort to verify the correctness of the statements made in the newsletters, apparently accepting all assertions as true. He did, however, telephone a principal of Petro West, Mr. Salmon, and asked him if the development work was really going on. Mr. Salmon stated that it was. Petitioner did speak to his accountant, Mr. Jim Riley, about the Petro West project sometime in the fall of 1982. Mr. Riley had prepared petitioners' tax returns for a substantial number of years and often met him socially as they had mutual friends. We quote Mr. Riley's testimony which we found credible: A. Mr Nowak came to the office and stated that he was looking into this venture. We discussed the prospectus. We discussed the phone calls that he had made. We discussed the newsletter that he had been receiving for quite some time, and the economic and tax matters that were involved in this venture. Q. Okay, and can you recall approximately -- can you recall what he said to you and what you said to him? A. He stated that he had *441 been receiving this newsletter for quite some time. That he had started looking into this venture on Petro West and researching it. He stated that he had made phone calls to the engineers, that he had talked to different people involved with Petro West and felt that it was a good venture to start participating in. Q. And can you recall what you said to him? A. I said that it was a very dangerous venture because any venture of this type where -- especially where a Note was involved that the IRS was looking at them very hard. That he could have and very probably would have a problem with the deduction down the road and that unless he had a good profit motive and unless he really went into it for the economic benefit that he shouldn't do it. Q. Okay, and did Mr. Nowak have a response? A. He stated that based on all his study and discussions with the people involved that he felt that it was a good venture and that he would make money at the venture.
Petitioner's decision that the Petro West project was a good venture and that he would make money at the venture was based solely upon representations in the newsletters and those made on the telephone to him by participants *442 in the project. He did some financial analyses, but they were based entirely upon the return projections made in the prospectus, the newsletters, and on the telephone to him. The information that petitioner received from the Petro West promoters contained their guidelines as to how the investment should be shown on his 1983 income tax returns. Petitioner took these items to Mr. Riley who utilized them in the preparation of the return without any investigation on his own regarding any aspects of the investment. Petitioner did not go to the working site of Petro West, nor did he do any independent investigation of this matter whatsoever. Petitioner, who is a successful businessperson, agreed that his background in electronics did not give him any expertise in ore mining. Petitioner was also well aware that Vello Kulbin, upon whose newsletter he placed such reliance, was a salesperson for Petro West. However, he found no reason to investigate Mr. Kulbin. Although invited to the mining site, he never went because he thought the cost prohibitive. Additions to Tax - In General. Petitioners' main contention appears to be that because they conceded that they could not claim *443 the Petro West deduction at the time of trial, they saved the Court time and trouble and accordingly should not be responsible for any of the additions to tax. We do not agree, and the cases cited by petitioners do not support their contention. Additionally, even if petitioners' contention had some merit, their basic factual premise is incorrect. The first notification this Court received in this regard was when petitioners' pretrial memorandum was received on October 19, 1993, shortly before the trial the following month. In the interim, respondent had filed her expert's report and prepared for trial. Negligence. Respondent determined that petitioners' underpayment of income tax for 1983 was due to negligence or intentional disregard of rules or regulations and, accordingly, determined that petitioners were liable for the negligence additions to tax pursuant to section 6653(a)(1) and (2). Negligence under section 6653(a) means a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners bear the burden of proving they were *444 not negligent in claiming the deductions on their 1983 return. Petitioners contend on brief that they relied on the advice of a competent tax adviser, Mr. Riley. The facts, however, are to the contrary. Mr. Riley warned petitioners about the deduction they intended to claim, but petitioners chose to rely upon the representations of the newsletter published by a seller of the project and by unverified statements of employees of the project. Petitioners attempt to place reliance on , revg. . Unlike the taxpayers in Heasley, this petitioner is not an unsophisticated investor. He is the creator and part owner of a successful business, and he knew enough to seek the advice of his tax return preparer and discuss the investment. Unfortunately, he chose to ignore Mr. Riley's warnings. Petitioner's effort to investigate this project was inadequate, as was that by the taxpayers in , whom we held liable for negligence. Accordingly, petitioners are liable for the additions to tax *445 for negligence. Substantial Understatement. Section 6661 provides that a taxpayer whose income tax return contains a substantial understatement of tax may be liable for an addition to tax equal to 25 percent of the underpayment attributable to such understatement. . An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. . However, the amount of the understatement taken into account under section 6661 can be reduced if there is substantial authority for the tax treatment of the item at issue, or if the taxpayer adequately disclosed the tax treatment of the item on his return. Sec. 6661(b)(2)(B). In addition, the Secretary may waive any or all of the addition to tax if the taxpayer shows that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). Petitioners made no attempt to present authority or reasonable cause for the understatement. Rather, petitioners contend that because of their concession, *446 respondent is precluded from asserting an addition to tax under section 6661 relating to this loss. They cite ; ; and , affd. , in support of this contention. In Todd, this Court held that, for purposes of section 6659, an underpayment of tax was not attributable to a taxpayer's overvaluation of his investment in containers, because the taxpayer conceded that the containers were not placed in service during the years in issue. As a result, there was no allowable deduction that could have been overvalued. Similarly, in , the Tax Court held that where taxpayers conceded prior to trial that they were not entitled to an investment tax credit because an agreement was a license rather than a lease, section 6659 was inapplicable because the underpayment was not attributable to a valuation overstatement. We note that respondent has not determined an addition *447 to tax under section 6659 in this case. In , the United States Court of Appeals for the Fifth Circuit held that the Internal Revenue Service abused its discretion by failing to waive the section 6661 addition to tax because the taxpayers showed reasonable cause and good faith when evaluating their proper tax liability. Here petitioners have not shown either reasonable cause or good faith. Section 6661 applies when there is a substantial understatement of income tax for any taxable year. Petitioner's attempt to analogize section 6659's valuation overstatement in , and , to section 6661 is without merit. Under section 6661, we are not faced with determining whether an understatement is "attributable to" a valuation overstatement. Our threshold inquiry is simply whether a substantial understatement of income tax exists. Petitioners have agreed that they substantially understated their income tax by virtue of their concession that they are not entitled to claim the Petro West mining loss. *448 This concession alone does not serve to alleviate the section 6661 addition to tax. See . There is no substantial authority for petitioners' claimed loss, and they presented no evidence of reasonable cause or good faith. Therefore, they are liable for the addition to tax under section 6661(a). We have dealt previously with petitioners' arguments about legislative intent supporting their nonliability for the additions to tax. Suffice it to say, we have rejected these arguments in , and just recently in . We similarly reject them here. Increased Interest. Section 6621(c) provides for an increased interest rate with respect to any "substantial underpayment" (greater than $ 1,000) in any taxable year attributable to a tax-motivated transaction. The increased rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to the date section 6621(c) was enacted. , *449 affd. without published opinion . The term tax-motivated transaction includes a transaction where any loss was disallowed by reason of section 465(a) or a transaction that is devoid of economic substance and without a profit objective. Sec. 6621(c)(3); , affd. in part and revd. in part sub nom. . Petitioners have conceded liability for Petro West Claims. We held in , that the transaction was without economic substance. Petitioners contend that because they conceded the Petro West loss, respondent is precluded from asserting any increased interest relating to that loss. Petitioners' concession argument is meritless. Respondent determined that petitioners were liable for increased interest because the Petro West loss was predominantly attributable to a tax-motivated transaction. Petitioners conceded this loss, but provided the Court with no evidence that the underpayment arising from this concession was *450 not attributable to a tax-motivated transaction. Therefore, in these particular circumstances, we sustain respondent's determination with respect to increased interest on the Petro West loss. See Cf. , vacating in part and remanding ; . Decision will be entered for respondent. Footnotes
1. Section references are to the Internal Revenue Code for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners, in their pretrial memorandum, argued that they were entitled to income averaging. Petitioners neither made the argument in their petition, nor did they present any evidence on this issue. Further, they did not mention income averaging in their brief herein; accordingly, they are considered to have abandoned this position.↩